**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO. 1:25-cv-2772

**TREVOR NOEL,**

**Plaintiff,**

**v.**

**POLARIS, INC.; POLARIS INDUSTRIES, INC.; and POLARIS SALES, INC.,**

**Defendants.**

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiff, Trevor Noel, through his undersigned attorneys, respectfully submits the following Complaint for Damages and Jury Demand against Defendants Polaris Inc., Polaris Industries, Inc. and Polaris Sales, Inc. (collectively, "Defendants" or "Polaris"):

## I. PARTIES

1.01 Plaintiff Trevor Noel is, and was at all times relevant, a citizen and resident of Evergreen, Jefferson County, Colorado.

1.02 Defendant Polaris, Inc. is, and was at all times relevant, a Delaware corporation with its principal place of business in Medina, Minnesota. Polaris Inc. does business in Colorado and is subject to personal jurisdiction in Colorado. It may be served by certified mail, return receipt requested, at its principal address: 2100 Highway 55, Medina, MN 55340-9770.

1.03 Defendant Polaris Industries, Inc. is, and was at all times relevant, a Delaware corporation with its principal place of business in Medina, Minnesota. Polaris Industries, Inc. does business in Colorado and is subject to personal jurisdiction in Colorado. Its registered agent

for service of process is The Corporation Trust Company, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268.

1.04 Defendant Polaris Sales, Inc. is, and was at all times relevant, a Minnesota corporation with its principal place of business in Medina, Minnesota. Polaris Sales does business in Colorado and is subject to personal jurisdiction in Colorado. Its registered agent for service of process is The Corporation Trust Company, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268.

## II.
## VENUE AND JURISDICTION

2.01 Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. 1332.

2.02 The Defendants reside in the District of Colorado, as the term is defined in 28 U.S.C. §1391 (c) (for venue purposes, a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced). Additionally, Venue is proper in the District of Colorado, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omission giving rise to the claim occurred in Chaffee County, Colorado. Plaintiff would show that the incident made basis of this suit occurred in Chaffee County, Colorado.

## III.
## FACTUAL BACKGROUND

3.01 On or about June 10, 2024, Plaintiff Trevor Noel was operating a 2022 Polaris RZR XP 1000, VIN: 3NSNAK997NN867666, ("the RZR") on Forest Service Road 373 in Chaffee County, Colorado. Plaintiff had rented the RZR from Collegiate Peaks Off-Road, Inc. in Buena Vista, Colorado for recreational riding in the nearby hills.




3.02 Plaintiff was driving at a reasonable and foreseeable speed on a curve on the relatively flat and level Forest Road, when the RZR rolled onto the driver's side. Plaintiff was partially ejected during the roll and his left arm was pinned between the RZR and the roadway. The RZR was not equipped with any window safety netting which was available to prevent hands and arms from leaving the interior space of the vehicle. Tragically, the impact and weight of the RZR totally crushed the bones and soft tissue in Plaintiff's arm, nearly amputating it. Multiple surgical procedures and lengthy physical therapy were performed to save his arm, but today, it is grossly disfigured and its functionality is severely diminished.

3.03 The defects in the Polaris RZR made Plaintiff's injuries far more severe than they otherwise would have been. Specifically, the absence of protective window netting and a properly designed occupant restraint system allowed Plaintiff's arm to be ejected and crushed during the foreseeable rollover. Under Colorado law, including the crashworthiness doctrine adopted in *Camacho v. Honda Motor Co.*, 741 P.2d 1240 (Colo. 1987), Defendants are liable for these enhanced injuries because they failed to design the RZR to reasonably minimize the risk of serious injury in a foreseeable accident.

## IV.
## STRICT LIABILITY AND NEGLIGENCE CLAIMS

4.01 The RZR at issue in this suit was designed, tested, manufactured, constructed, marketed, distributed, sold and/or placed into the stream of commerce by and through the agents and/or representatives of Polaris.

4.02 Polaris was regularly engaged in the business of supplying or placing products, like the RZR in question, in the stream of commerce for use by the consuming public, including Plaintiff. Further, such conduct was solely for commercial purposes.

4.03 The RZR in question remained unchanged from the time it was originally manufactured, distributed and sold by Polaris until it reached Plaintiff and ultimately led to his injuries. Stated another way, the RZR in question was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.04 At the time the RZR was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the RZR would be used by persons such as Plaintiff in the manner and application in which it was being used at the time Plaintiff suffered his injuries.

4.05 There were no mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government that were applicable to the RZR at the time of manufacture and that governed the product risk that allegedly caused harm. Alternatively, the design of the RZR did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the RZR model at the time of the manufacture and governed the risks that caused Plaintiff's injuries. Again, in the alternative, in the event that such standards were in effect, and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing the RZR, withheld or misrepresented the information or material irrelevant to the federal governments or agencies determination of adequacy of the safety standards or regulations at issue in the action.

4.06 With respect to the design of the RZR, at the time it left the control of Polaris, there were safer alternative designs. Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of injury to Plaintiff.

Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of Polaris by the application of existing or reasonably achievable scientific knowledge. More specifically, Polaris made the conscious decision to design the RZR model off-road vehicles without protective window netting as standard and required equipment. Yet, Defendants knew that such vehicles:

a. had a propensity to tip and roll with foreseeable use;

b. a rider's arm could be ejected from the vehicle during a rollover which could result in catastrophic injuries; and

c. protective netting was needed to prevent such injuries.

4.07 Polaris knew of many prior instances of catastrophic injuries in rollovers of their products associated with partial ejection. Previously, Defendants had designed and included safety features, including protective netting, in the sale of similar products to mitigate the risk of catastrophic injuries associated with partial ejection, but chose to remove these features before the sale of the subject RZR.

4.08 At the time the RZR left Polaris' control, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured, or marketed to minimize the risk of injury during a rollover/tip over event. By way of example and without limitation, the product in question was unreasonably and dangerously defective in the following ways:

a. the occupant safety restraint system was defectively designed, manufactured, and marketed because it failed to contain occupants inside the RZR occupant space during the reasonable and foreseeable use of the RZR resulting in a foreseeable accident;

b. failing to incorporate window netting; and

c. the warnings and instructions for the RZR were inadequate.

4.09 The above unreasonably dangerous defects in the RZR in question were the proximate and producing cause of Plaintiff's injuries and damages.

4.10 Polaris breached its duty of care and was thus negligent by:

a. designing, marketing, and distributing the Polaris RZR XP 1000 model with a design standard that was intended to meet the minimum government regulations, instead of safely designing the RZR to reasonably minimize injuries in foreseeable accidents;

b. failing to adequately monitor the performance of Defendant's vehicles in the field to ensure that they were reasonably minimizing injuries in foreseeable accidents;

c. failing to adequately test the Polaris RZR XP 1000 model to ensure that it would be reasonably safe in foreseeable accidents;

d. failing to adequately design and test the occupant safety restraint system for the Polaris RZR XP model to ensure that it would perform as intended and would be reasonably safe during a foreseeable use;

e. failing to design the occupant safety restraint system in compliance with Federal Regulatory Safety Standards;

f. designing and manufacturing the Polaris RZR XP 1000 model's occupant restraint systems that were defective and dangerous;

g. failing to provide window netting;

h. failing to provide adequate warnings and instructions with the Polaris RZR XP 1000 model; and

i. failing to provide adequate post-sale warnings, recalls or retrofits after Polaris knew, or should have known, that the Polaris RZR XP 1000 model was defective and unreasonably dangerous.

4.11 The above-listed negligent acts and/or omissions were a proximate and producing cause of the injuries and damages alleged by Plaintiff.

## V.
## DAMAGES

5.01 As a direct and proximate result of the negligence of Defendants described above, Plaintiff alleges damages he suffered as a result of the injuries sustained in the incident made basis of this suit, including but not limited to:

a. Past and future medical expenses;

b. Past and future lost wages/loss of earning capacity;

c. Past and future pain and suffering;

d. Past and future mental anguish;

e. Past and future disfigurement; and

f. Past and future physical impairment.

## VI.
## PRE-FILING, PRE-JUDGMENT AND POST-JUDGMENT INTEREST

6.01 Plaintiff claims pre-filing, pre-judgment and post-judgment interest at the maximum rate allowed by law.

## VII.
## JURY DEMAND

7.01 Plaintiff respectfully requests that the Court impanel a jury to decide all triable issues in this case.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer this Complaint and that upon final hearing, Plaintiff recovers judgment against Defendants for his damages as they appear at trial hereof together with costs of court, pre-filing interest, prejudgment and post-judgment interest, and for such general and equitable relief as Plaintiff may be entitled.

Respectfully submitted this 4th day of September 2025.

*/s/J. Todd Tenge*
J. Todd Tenge, Esq. #22088
Tenge Law Firm, LLC
3223 Arapahoe Avenue Ste 325
Boulder, Colorado 80303
(303) 665-2929
jttenge@tengelaw.com

and
*/s/James L. Mitchell*
**JAMES L. MITCHELL**
Texas Bar No. 14214300
Jim@PayneMitchell.com
**ANDREW S. BULLARD**
Texas Bar No. 24104622
abullard@paynemitchell.com
**PAYNE MITCHELL RAMSEY LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 Telephone
214/252-1889 Facsimile

ATTORNEYS FOR PLAINTIFF